# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| SHANNON NELSON | * | CIVIL ACTION NO. 09-0302 |
| VERSUS | * | JUDGE JAMES |
| WAL-MART STORES INC., WAL-MART LOUISIANA LLC | * | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING[1]

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to remand [Doc. # 7] filed by Plaintiff Shannon Nelson ("Plaintiff"). The motion is opposed by Defendants Wal-Mart Stores Inc. and Wal-Mart Louisiana LLC ("Defendants"). For reasons stated below, the motion to remand is **DENIED**.

## BACKGROUND

On May 12, 2008, Plaintiff filed an action in the Fourth Judicial District, Ouachita Parish, alleging that she slipped and fell while shopping in Defendants' store as a result of Defendants' negligence. The complaint states that Plaintiff "sustained serious injury to her left shoulder which has required her to seek extensive medical treatment, care, evaluation, and consultation from various healthcare providers of her choice." State Court Petition, ¶ 6. The complaint further states that Plaintiff is seeking the following damages: (1) past and future loss of enjoyment of life; (2) past and future pain and suffering; (3) past and future mental anguish and

---

[1] As this is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

emotional distress; (4) past and future medical expenses: (5) past and future loss of earning capacity; (6) past and future loss of earnings; (7) past and future disability; (8) past and future physical impairment; (9) past and future loss of non-market services (inability to perform activities of daily living and the like); and (10) all other past and future damages of every nature and kind which petitioner will show at the trial of this matter.[2] *Id.* at ¶ 9.  Finally, the complaint demands a jury trial on the ground that "the amount in controversy of each claim herein does exceed the total of $50,000.00 exclusive of interest and costs." *Id.* at ¶ 11.

On June 15, 2008, Defendants received Plaintiff's responses to a set of Interrogatories and Requests for Production of Documents.  In these responses, Plaintiff stated that as a result of the accident, she had suffered "pain and inflammation in her left shoulder, impingement in the left shoulder requiring injections, medication, physical therapy and surgery" and that she reserved the right to supplement or amend her answer at a later date if necessary.  *See* Doc. #7-2, Ex. A.  Plaintiff also itemized all medical and hospital bills that she had incurred as a result of her injuries and stated that the total cost was $26,236.17.  *Id.*  She again reserved the right to supplement and/or amend the response at a later time "once she has finished treating medically and all bills have been received."[3]  *Id.*  In response to an interrogatory regarding lost wages, Plaintiff stated that she is self-employed as a cosmetologist and that she had to cancel appointments due to her injury, resulting in lost wages of $318.00.  *Id.*

Subsequently, by letter dated August 6, 2008, Plaintiff sent Defendants copies of her

---

[2] The complaint also prays for "all costs of court, for judicial interest from date of judicial demand until paid, for all expert witness fees, and for any and all other full, general, and equitable relief as this Honorable Court may deem fit to grant."  *See* State Court Petition, ¶ 11.

[3] Plaintiff listed eight medical providers in response to an interrogatory requesting the names of healthcare providers who had treated her for injuries sustained in the accident.  See Doc. #7-2, Ex. A.

medical records from P&S Surgical Hospital and The Orthopaedic Clinic, which Plaintiff states "consisted of several pages, and included among other things, the operative report relating to the shoulder surgery and an office note from a follow-up appointment with Dr. Douglas N. Liles."[4] The operative report details the surgery performed on Plaintiff's shoulder and lists preoperative and postoperative diagnoses of chronic impingement of the left shoulder, Doc. #7-4, Ex. C, while the office note states as follows:

> **PRESENT ILLNESS**: Overall pain is a lot better. She has occasional click and pop in the shoulder. It still causes some discomfort. She is trying to make job modifications, etc., but she shows good active motion of the shoulder.
>
> **RECOMMENDATIONS**: I would just still be cautious about claiming this to be over with. I will just see her back in two months.

Doc. #7-5, Ex. D. On January 23, 2009, Defendants took Plaintiff's deposition, at which time Plaintiff stated that she was still receiving treatment and that she had undergone two surgeries performed by Dr. Liles.[5] Defendants state that they received the transcript of Plaintiff's deposition testimony on February 19, 2009.

On February 24, 2009, Defendants removed the case to this Court on the basis of diversity jurisdiction,[6] contending that it was not until they received the transcript of Plaintiff's deposition testimony revealing that Plaintiff had undergone two surgeries and continued to receive medical treatment that it became apparent that the amount in controversy was greater

---

[4] The actual medical records are not part of the record in this case.

[5] Defendants have not submitted the deposition transcript; however, Plaintiff does not dispute that this was the substance of her testimony.

[6] The undersigned has examined the notice of removal and finds that diversity of citizenship does exist in this case.

than $75,000.[7]  On March 24, 2009, Plaintiff filed the instant motion to remand to state court on the ground that the removal was untimely.  Plaintiff contends that (1) it was facially apparent from the original petition that the amount in controversy requirement was met and (2) alternatively, the complaint combined with Plaintiff's subsequent discovery responses and medical documentation revealed that the case was removable.

## LAW AND ANALYSIS

"Any civil action brought in a state court of which the district courts have original jurisdiction may be removed to the proper district court." *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882 (5th Cir. 2000) (citing 28 U.S.C. § 1441(a))).  "District courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." *Id.* (citing 28 U.S.C. § 1332(a)(1)).

The Fifth Circuit has ". . . established a clear analytical framework for resolving disputes concerning the amount in controversy for actions removed from Louisiana state courts pursuant to § 1332(a)(1)." *Id.* (citing *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999)). "Because plaintiffs in Louisiana state courts, by law, may not specify the numerical value of claimed damages, 3 La.Code Civ.P. art. 893, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000." *Id.* "A defendant can prove the amount either by showing that it is facially apparent from the nature and amount of the claims that they are likely to be above the requisite amount, or by setting forth the

---

[7] They contend that because the medical expenses from Plaintiff's first surgery were approximately $17,000, it is logical to assume that the expenses from her second surgery were similar, which would result in approximately $43,000 in medical bills alone.

4

facts which would support a finding of the requisite amount." *Robinson v. Delchamps, Inc.*, 1998 WL 352131, *1 (E.D.La. June 30, 1998) (citing *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)). "To determine whether it is facially apparent that a complaint that seeks an unspecified amount of damages satisfies the amount-in-controversy requirement, courts in the Fifth Circuit consider both the types of injuries alleged by the plaintiff and the types of damages requested." *Corkern v. Outback Steakhouse of FL, Inc.*, 2006 WL 285994, *3 (E.D.La. February 6, 2006).

In this case, Plaintiff's asserted basis for remand is not that Defendants have failed to demonstrate that the amount in controversy exceeds $75,000, but rather that Defendants' removal was untimely. The starting point for any discussion involving the timeliness of removal is 20 U.S.C. § 1446(b), which states as follows:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based.... If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b). As noted above, Louisiana does not permit plaintiffs to claim a specific amount of damages in their petitions, which often makes the issue of whether it is facially apparent from a Louisiana state court petition that a plaintiff's claims exceed $75,000, and therefore when the case becomes removable, a complicated one.

The seminal case in the Fifth Circuit case regarding when the removal clock is triggered

is *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 161 (5th Cir. 1992), in which the court held that the thirty-day time period set forth in section 1446(b) "starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." *Id.* at 163; *Wise v. Bayer*, 281 F.Supp.2d 878 (W.D.La. 2003). The court then purported to adopt "a bright-line rule requiring the plaintiff, if he wishes the thirty-day time period to run from the defendant's receipt of the initial pleading, to place in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount."[8] In the case *sub judice*, Plaintiff's original state court petition contains no such allegation.

However, cases decided since *Chapman* have indicated that the rule requiring a plaintiff to specifically state that his or her claims exceed the federal amount-in-controversy requirement in order to start the thirty day removal clock is not so "bright line" as originally thought. For example, in *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 210 (5th Cir. 2002), the Fifth Circuit itself stated that, subsequent to *Chapman*, it has "since held that specific damage estimates that are less than the minimum jurisdictional amount, when combined with other unspecified damage claims, can provide sufficient notice that an action is removable so as to trigger the time limit for filing a notice of removal." The court further held that "[t]he *Chapman* measure of the 'affirmatively reveals on its face' standard does not apply to the second paragraph of section 1446(b), but rather the information supporting removal in a copy of an amended pleading, motion, order or other paper must be 'unequivocally clear and certain' to start the time limit running for a notice of

---

[8] The court reasoned that La.Code Civ.P. art. 893(A)(1) did not "prohibit a plaintiff from alleging in his initial pleading that the damages exceed the minimum jurisdictional amount of the federal court." *Id.* at 162 n.3.

6

removal under the second paragraph of section 1446(b)." *Id*. at 211.

Moreover, although some district courts, in the wake of *Chapman*, have mandated that plaintiffs allege a specific dollar amount in order to commence the thirty day clock, "others, [including at least one in the Western District], have found that *Chapman* does not mandate 'rigid adherence to some kind of formalistic pleading requirement....'; [r]ather, the latter courts say *Chapman* 'merely requires that a state court complaint be sufficiently definite on its face to enable defendants to ascertain removability without reliance on speculation or conjecture.'" *Wise*, 281 F.Supp.2d at 884; *see also Stone v. Nirvana Apts.*, 2008 WL 4844715, *5 (W.D.Tex. October 17, 2008) (citations omitted) (noting numerous district court cases from the Fifth Circuit holding that *Chapman* "does not require a plaintiff to enunciate a specific dollar allegation to begin the thirty day removal period"). Accordingly, the *Wise* court held that "defendants cannot convert the *Chapman* 'bright line' rule into a 'head in the sand' rule.[9] *Id*. (citation omitted). Therefore, in accordance with *Bosky* and *Wise*, the undersigned finds that the fact that Plaintiff's complaint did not include a specific allegation that her damages exceeded $75,000 is not dispositive; rather, the controlling issue is at what point Defendants should have been on notice that Plaintiff's claims exceeded $75,000 and, therefore, that this case was removable.

Despite Plaintiff's contention otherwise, the undersigned finds that it was not facially apparent from the original state court petition that Plaintiff's claims met the amount in controversy requirement. Numerous district courts in the Fifth Circuit have addressed allegations

---

[9] The court stated that "[i]f this court were to follow the defendants' reasoning that cases are not removable until there has been an absolute affirmation that more than $75,000 was in issue, then plaintiffs would deliberately avoid making these kinds of statements until the one year time limit in § 1446(b) had expired. . . . Certainly Congress did not intend to condone this type of forum manipulation." *Id*. at 884.

7

similar to Plaintiff's and have concluded that it was not facially apparent that the amount in controversy was more than $75,000. For example, in *Evans v. Wal-Mart Stores, Inc.*, 2004 WL 1488599 (E.D.La. June 30, 2004), the plaintiff alleged that as a result of a Wal-Mart employee's rolling over her foot with a shopping card, she had "suffered severe physical injuries to her foot," and also that she began experiencing severe pain, trouble walking, and frequent swelling.[10] *Id.* She sought damages for past and future medical expenses, lost wages, serious physical and mental pain and suffering, and loss of quality of life. *Id.* The court found that it was not facially apparent from the petition that the plaintiff's claims exceeded $75,000 because (1) her allegations were vague and the complaint "revealed almost nothing as to the specific injuries she sustained" and (2) there was no indication as to how much work the plaintiff had to miss.

Similarly, in *Fontenot v. Granite State Ins. Co.*, 2008 U.S. Dist. LEXIS 91613 (W.D.La. Nov. 3, 2008), the plaintiff alleged in her complaint that an automobile accident caused by the defendant's negligence had caused her to suffer "person injuries 'to the muscles, ligaments and tendons of the cervical, thoracic and lumbar spine, which have and are continuing to cause [her] pain and suffering, limitation of motion, residual dysfunction, disability, lost wages, impairment of earning capacity, loss of enjoyment of life and medical expenses, past, present and future . . . .'" *Id.* at *1. The court found that it was not facially apparent that the plaintiff's claims exceeded $75,000 as she had "merely ple[d] general categories of damages (pain and suffering, disability, lost wages, loss of earning capacity, medical expenses, etc.) without any indication of the amount of damages sought." *Id.* at *10. The court reasoned that "[s]uch generic 'categories of damages

---

[10] The plaintiff also alleged that she had undergone surgery on her foot prior to the incident and that her recovery from such surgery was hampered by the incident. *Id.*

8

are often prayed for in cases that have far less than $ 75,000 in controversy, so their generic listing adds almost nothing toward satisfying the removing party's burden.'" *Id*. (citation omitted). The court also noted that although the complaint alleged "non-specific" back and neck injuries, there was "no indication as to the severity or nature of the injury, or the frequency or cost of past or anticipated future medical treatment, which would allow any reasonable estimation that the amount in controversy exceeds $ 75,000.00." *Id*. Finally, the fact that there was no description of the plaintiff's disability also persuaded the court that it was not facially apparent that the amount in controversy requirement was met. *Id*.; *see also Vaughn v. Todd*, 71 F.Supp.2d 570 (E.D.La. 1999) (finding that it was not facially apparent from plaintiff's complaint that claims exceeded $75,000 based in part on the fact that "plaintiff's list of damages, although extensive, did not give any indication as to the nature or extent of any of the plaintiff's claims; for example, the complaint did not state "what disabilities [were] alleged, what wages were lost or expected to be lost, or what medical expenses were incurred.").

In *McCormick v. Fletchall*, 2006 U.S. Dist. LEXIS 87105 (W.D.La. Nov. 30, 2006), the only allegation regarding plaintiff's injuries consisted of her statement that she "sustained serious physical injuries as a result of this accident, including but not limited to, her right knee which may require surgery." *Id*. at *1. The plaintiff also sought damages for past, present, and future pain and suffering, medical expenses, loss of earning capacity, and mental anguish. *Id*. The court found that it was not facially apparent that the amount in controversy requirement was met given that the complaint provided no specific information as to the injuries suffered by the plaintiff or what type of surgery she might have required; with regard to the damages sought, the court stated that the "[p]laintiff's simple prayer for past, present and future damages of various sorts is also

9

insufficient to make it facially apparent that the amount in controversy exceeds $ 75,000 . . . because "[i]f such a generic request were sufficient, there would be few, if any, personal injury actions that would not satisfy the amount in controversy requirement." *Id*. at *3; *see also Guillory v. Chevron Stations*, 2004 U.S. Dist. LEXIS 14226, *4-5 (E.D. La. July 22, 2004) (finding that it was not facially apparent from plaintiff's allegation that she had suffered "a fracture to her knee and torn internal structures of her knee" and prayer for "damages for past and future pain, suffering, and disability; past and future medical expenses; past and future loss of wages and salary; and past and future loss of enjoyment of life" that the amount in controversy exceeded $75,000; it was "not apparent that the unspecified damages for wages, pain, suffering, and loss of enjoyment of life would push the damages over $ 75,000" for an injury that typically garnered less than $75,000 in general damages and medical expenses); *Touchet v. Union Oil Co.*, 2002 U.S. Dist. LEXIS 5746, *1,5 (E.D. La. Mar. 26, 2002) (plaintiff alleged injury to his "neck, back, and other parts of his body" and sought damages for "…mental and physical pain and suffering, past and future; medical expenses, past and future; loss of wages and impairment of earning capacity, past and future; permanent disability; and loss of enjoyment of life"; court found that it was not facially apparent that the claims exceeded $75,000 due to lack of specificity as to the level or severity of plaintiff's injuries and because the damages sought were a "typical listing of damage categories that a prudent attorney will include in his petition when medical treatment or complaints of pain are ongoing").

    The undersigned finds the aforementioned cases instructive on the facts at bar. Plaintiff's state court petition does not allege any specific injury to her shoulder; rather, she simply states that she suffered a "serious injury" that required her to seek extensive medical treatment, care,

evaluation, and consultation from various healthcare providers. She does not provide any information as to what type of medical treatment she received, nor is there any indication that any surgery or hospitalization was required due to her injury or that her injury was permanent. Moreover, although she generically lists a litany of damages, there is no indication as to the basis for or extent of any these damages.

Plaintiff relies on the fact that she stated in her complaint that her damages exceeded $50,000 for the purpose of securing a jury trial under Louisiana law, contending that "it is not that much of a stretch to get from $50,000 in damages to $75,000;[11] however, such an allegation is not sufficient to make it facially apparent that Plaintiff's exceed $75,000. *See Brown v. Buerger*, 2005 WL 2487949, *2 (W.D.La. October 7, 2005) (noting that plaintiff's request for damages above $50,000 served only to support his request for a jury trial and was not sufficient to show that his claims exceeded $75,000); *Evans*, 2007 WL 1488599 at *2 n.3 (rejecting plaintiff's claim that the fact that the state trial court judge granted defendant's request for a jury trial should have indicated that the case was removable based on the fact that the minimum quantity of damages for jury trials is significantly lower than the amount in controversy requirement); *Jacob v. Greyhound Lines, Inc.*, 2002 WL 31375612, *3 (E.D.La. Oct. 21, 2002) (stating that defendant's request for jury trial in their answer was not an acknowledgment that the amount in controversy exceeded $75,000 because the right is waived under state law if not timely made; a jury demand in state court is relevant, but it does not control the analysis); *Alkazin v. City of Baton Rouge*, 705 So. 2d 208, 212 (La.App. 1 Cir. 1997) (right to a jury trial is waived if not timely requested).

---

[11] Defendants also requested a jury trial in their answer to the state court petition.

Plaintiff relies on *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000), in which the Fifth Circuit found that the plaintiff's allegations that she had suffered injuries to her "right wrist, left knee and patella, and upper and lower back" combined with the fact that she was seeking numerous types of damages to be sufficient to indicate that it was facially apparent that her claims exceeded the amount in controversy requirement. However, although not the model of specificity, the injuries alleged in *Gebbia* were more numerous and severe than those in the case at bar, where Plaintiff alleges an injury only to her shoulder. *See Guillory*, 2004 U.S. Dist. LEXIS 14226 at *5 n.1 (distinguishing *Gebbia* on this ground); *Touchet*, 2002 U.S. Dist. LEXIS 5746 at *6-7 (same).[12] Accordingly, based on the foregoing discussion, the undersigned finds that it was not facially apparent from Plaintiff's state court petition that her claims exceeded $75,000; therefore, the thirty day time period for removal did not commence at the time of the filing of such petition.

Plaintiff next contends that even assuming her original complaint did not trigger the clock for the removal time period, the complaint combined with her discovery responses and the medical documentation she provided to Defendants was sufficient to put them on notice that the case was removable. While the Fifth Circuit has clearly held that "discovery-type documents may constitute "other paper," the undersigned finds that the discovery responses and other information relied upon by Plaintiff did not trigger the thirty-day removal period. As noted

---

[12] Plaintiff also cites *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir.1999); however, the facts of that case are distinguishable from those at bar given that the *Luckett* plaintiff alleged that she had suffered congestive heart failure, pulmonary edema, and respiratory distress, and sought damages for "property, travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and her temporary inability to do housework after the hospitalization." *Id*. at 297-98. Plaintiff's alleged injuries in this case are not nearly so specific or severe.

above, in order for an amended pleading, motion, order or other paper to support removal, it must be "unequivocally clear and certain" that the amount in controversy exceeds $75,000 so as to start the thirty-day clock." *Chapman*, 969 F.2d at 211. In this case, although Plaintiff's interrogatory responses provided slightly more detail regarding the nature of her alleged shoulder injury and resulting treatment, stating that she had suffered "pain and inflammation in her left shoulder, impingement in the left shoulder requiring injections, medication, physical therapy[13] and surgery," such responses also listed only approximately $26,000 in medical expenses and, more importantly, only listed $318.00 in total lost wages resulting from her injury. As Defendants note, such a *de minimis* lost wages claim conveyed the possibility Plaintiff's injury was not very severe or debilitating and, therefore, that the amount in controversy requirement was not clearly and unequivocally met. In addition, the mere fact that Plaintiff reserved the right to amend her responses once her treatment was finished did not suffice to put Defendants on notice that her claims exceeded $75,000.

Moreover, Plaintiff's reliance on the medical documentation provided to Defendants is excessive. The operative report merely detailed the specifics of the surgery Plaintiff underwent and contributed no new information of any significance regarding such surgery, the medical expenses which had already been included in the $26,000 figure provided in the interrogatory responses, or the potential damages resulting therefrom. Also, the follow-up note is ambiguous at best regarding Plaintiff's condition, on the one hand stating that Plaintiff's overall pain was a lot better and that she showed good active motion of her shoulder and on the other hand that she

---

[13] Plaintiff's itemization of medical expenses reveals that she was in physical therapy from January 8, 2008, to February 6, 2008, and May 7, 2008, to May 22, 2008.

had an occasional click and pop in her shoulder that still caused some discomfort and that the doctor would be "cautious about claiming this to be over with." Even considered in combination with the other information available to Defendants, the undersigned does not find that this documentation clearly and unequivocally indicated that Plaintiff's claims exceeded $75,000.

Hence, the undersigned agrees with the Defendants that it did not become clear and unequivocal that this case was removable until Plaintiff testified in her deposition that she had in fact undergone two surgeries on her shoulder and was continuing to receive medical treatment. This information, when considered in combination with the allegations and damages sought in Plaintiff's complaint and the information provided in her discovery responses, indicated that her claims exceeded $75,000. The issue remains, however, whether it was Plaintiff's actual deposition testimony, or Defendants' receipt of the transcript of such testimony, that triggered the thirty day removal clock.

Plaintiff contends that the thirty day removal period was triggered by her live testimony during the deposition that the notes taken by Defendants during the deposition should be deemed "other paper" for the purposes of section 1446(b). The undersigned acknowledges that at least one district court in the Fifth Circuit has stated that there is "no functional difference between a deposition and a transcript of a deposition for purposes of the removal statute," and that some district court cases have indicated that the actual deposition rather than the transcript commences the removal period. *Poole v. Western Gas Res.*, 1997 WL 722958, *2 (E.D.La. Nov. 18, 1997); *In re Vioxx Products Liability Litigation*, 2005 WL 3542885, *5 (E.D.La. Nov. 3, 2005).

However, in *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996), the Fifth Circuit specifically held that a transcript of deposition testimony is "other paper" sufficient

to trigger the thirty day removal clock and therefore that removal commenced within thirty days of receiving a transcript which reveals that the amount in controversy requirement is met is timely under section 1446(b). In *S.W.S. Erectors*, the defendant removed the case on the ground that it did not become apparent that the amount in controversy requirement was met until it received the transcript of the plaintiff's deposition. *Id*. at 491. Although there is no indication that plaintiff made the specific argument that the actual deposition testimony rather than the transcript triggered the thirty day clock, the court nonetheless specifically held that the removal based on the deposition transcript was timely. *Id*.; *see also Delaney v. Viking Freight, Inc.*, 41 F.Supp.2d 672, 677 (E.D.Tex. 1999) ("The Fifth Circuit has squarely held that a deposition transcript qualifies as 'other paper' within the meaning of 28 U.S.C. § 1446(b) that can start accrual of the 30-day period for removing."); *Cox v. United Parcel Service*, Inc. 2000 WL 28176, *2 (E.D.La. Jan. 12, 2000) (upholding removal as timely based on the defendant's removal of the case within thirty days of receipt of the plaintiff's deposition transcript); *Sanchez v. Southwest Texas Equipment Distributors, Inc.*, 2006 WL 488309, *2 (W.D.Tex. Jan. 27, 2006) ("Under *S.W.S. Erectors*, the receipt of the written deposition transcript, not the oral testimony itself, triggers the running of section 1446(b)'s thirty-day removal period."); *but see Huffman v. Saul Holdings Ltd. Partnership*, 194 F.3d 1072, 1078 (10th Cir. 1999) (reasoning that because the Federal Rules of Civil Procedure do not provide a deadline for obtaining a transcript of a deposition, the actual giving of the deposition testimony triggers the removal clock, not the receipt of the transcript).[14] Therefore, in light of the Fifth Circuit's holding in *S.W.S. Erectors*,

---

[14] The undersigned notes that, in *Eggert v. Britton*, 223 Fed.Appx. 394, 397 (5th Cir. 2007), the Fifth Circuit cited *Huffman* generally, along with another case in which a demand letter was found to be "other paper," in noting that "other paper" is typically looked to by courts in the situation in which a plaintiff files

the undersigned finds that Defendants' receipt of the transcript of Plaintiff's deposition triggered the thirty-day removal period. Because Defendants removed this case on February 24, 2009, within thirty days of their receipt of the deposition transcript, the removal was timely.

Accordingly, jurisdiction over this case is proper, and the motion to remand [Doc. # 7] filed by Plaintiff, Shannon Nelson, is hereby **DENIED**.

THUS DONE AND SIGNED this 22nd day of April, 2009, in Monroe, Louisiana.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

a state court complaint that does not state an amount in controversy but a later document then establishes that the claim exceeds $75,000. However, there was no issue in that case regarding whether the actual deposition testimony or the transcript triggered the removal clock nor did the court make any distinction between the two or indicate any inclination to abandon its holding in *S.W.S. Erectors*. Therefore, there is no indication that *Eggert* should cast doubt on the holding in *S.W.S. Erectors*.

Also, in *Ameen v. Merck & Co., Inc.*, 226 Fed.Appx. 363 (5th Cir. 2007), the Fifth Circuit, relying on *S.W.S. Erectors*, held that a notice of removal based on improper joinder was timely when filed within thirty days of the date of the plaintiff's deposition. *Id*. at 368. However, there is no indication there was an issue in that case as to whether the live deposition testimony or the transcript of the testimony triggered the thirty day period. Moreover, it does not follow *a fortiori* from the fact that the court held that removal was timely because it was initiated within thirty days of the actual deposition that removal within thirty days of the receipt of the transcript of the deposition would have been held to be untimely. Also, given the *Ameen* court's express reliance on *S.W.S. Erectors*, it is apparent that the case remains good law and therefore is binding on this Court.